G. W. Hayden v. McMillan, Devine & Howard, Garnishees, and M. F. & J. P. Rice, Intervenors.

No. 275.

**Rents Community Property.** — Rents arising from lease of the wife's separate real estate are community property, and liable for the husband's debts.

Appeal from Bexar. Tried below before Hon. Geo. H. Noonan.

*Jay Minter, S. M. Ellis* and *James Routledge*, for appellant.—The trial court erred in holding that the rents arising from the separate real estate of the wife are not liable for the debts of the husband. Rhine v. Blake & Jenkins, 59 Texas, 240; Connor v. Hawkins, 66 Texas, 639; Cleveland v. Cole, 65 Texas, 402, and cases cited; Braden v. Gose, 57 Texas, 37; Epperson v. Jones, 56 Texas, 425; De Blane v. Lynch, 23 Texas, 25.

*Barnard & McGown*, for appellees.—1. The Constitution guarantees to the wife as her separate property all property, both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent; and this guarantee carries with it the right to the rents, revenues, and profits of such property, as well as the corpus.

2. The rents are a part of and follow the title to the land.

3. The phrase "as also the increase of all lands," as used in article 2851, Revised Statutes, means rents, revenues, and profits. Cartwright v. Hollis, 5 Texas, 152; 5 Texas, 363; Hall v. Hall, 52 Texas, 299; Le Gierse v. Moore, 59 Texas, 472; George v. Ransom, 15 Cal., 322; Spears

v. Ward, 20 Cal., 674; Lewis v. Jones, 24 Cal., 101; Kramer v. Kramer, 52 Cal., 305; Charalean v. Woffender, 25 Pac. Rep., 652.

FLY, Associate Justice.—The parties to the above cause submit the following agreed statement of facts, under article 1414 of the Revised Statutes:

"1. That this is a garnishment proceeding, sued out in the case of G. W. Hayden v. Rice Bros. & Co., pending in the District Court of the Thirty-seventh Judicial District of Bexar County, Texas. McMillan, Devine, & Howard are the garnishees, and filed an answer herein, admitting their indebtedness to Mrs. M. F. Rice and her husband, under lease contract entered into between them and Mrs. M. F. Rice, joined by her husband, leasing the premises known as number 252 West Commerce Street, in the city of San Antonio, Bexar County, State of Texas; and prayed that Mrs. M. F. Rice and her husband, J. P. Rice, be made parties defendant. Mrs. M. F. Rice, joined by her husband, J. P. Rice, in response to the answer of McMillan, Devine & Howard, appeared and filed an answer, setting up that the rents due under the lease contract with McMillan, Devine & Howard were the separate property of Mrs. M. F. Rice, under the Constitution of the State of Texas, article 16, section 15, and the Revised Statutes of the State of Texas, article 2851; and filed cross-action against McMillan, Devine & Howard for the rents admitted to be due under said lease contract.

"2. It is admitted that J. P. Rice was a member of the firm of Rice Bros. & Co. at the time the judgment in the above case was rendered against said firm; and that the said judgment was for debts for the payment of which Mrs. M. F. Rice's separate property would not be liable.

"3. Mrs. M. F. Rice is the wife of J. P. Rice, and was his wife when the above judgment was rendered against him as a member of said firm.

"4. McMillan, Devine & Howard are indebted under said lease contract to Mrs. M. F. Rice in the sum of $324.27, for rents due thereunder up to March 6, 1893, upon the premises known as 252, on West Commerce Street, in the city of San Antonio, Bexar County, Texas. The lease contract was executed by Mrs. M. F. Rice, joined by her husband, with said McMillan, Devine & Howard.

"5. The premises known as 252 West Commerce Street consists of lots and store buildings erected thereon, and are the separate property of Mrs. M. F. Rice, having been acquired by her by devise from her father, William Vance, before her marriage.

"6. Intervenors, on their cross-action against McMillan, Devine & Howard, are entitled to recover judgment for the rents due under said lease contract, unless the plaintiff, G. W. Hayden is entitled to recover same by reasons of his garnishment.

"Under these facts, the issues submitted to the court are:

" (1) Are the monthly rents accruing from the lease of Mrs. M. F. Rice's separate property subject to garnishment for the satisfaction of the debts of her husband, J. P. Rice ?

" (2) Are the rents accruing from the lease of Mrs. M. F. Rice's separate property the community property of J. P. Rice and his wife, M. F. Rice, under section 15, article 16, of the Constitution of 1876, and article 2851 of the Revised Statutes of the State of Texas ?"

The Constitution of 1845, article 7, section 19, provided, that " all property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well as to her separate property as that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

This section was copied verbatim et literatim into the Constitutions of 1861, 1866, and 1876.   The Constitution of 1869, article 12, section 14, was as follows:   " The rights of married women to their separate property, real and personal, and the increase of the same, shall be protected by law."   This is the only constitutional provision that has ever in Texas in any way mentioned the increase of the separate property of married women.

As required by the Constitution of 1845, the Legislature, on March 13, 1848, passed a law defining the rights of married women, which has, amid the downfall of governments and the wreck of constitutions, except as to dropping the word slaves, remained the same.   It is article 2851, Revised Statutes, which reads as follows:   "All property, both real and personal, of the husband, owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, shall be his separate property.   All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife; but during the marriage the husband shall have the sole management of all such property."   It can be readily seen that this statute does not declare that the increase of separate personal property shall be separate property, but it is only the " increase of lands " that is so denominated.

The only difficulty in construing the statute is in arriving at the legislative intent as to " increase of lands."   We find by consulting the decisions of other States, that a large number of them differ with Texas decisions on the subject of the separate property of married women, both real and personal.   But where there are a long line of decisions in our own State, under which property has been acquired, and which have

met the sanction of bar and people for a long time, we do not believe that we should make a departure from the paths hitherto followed, in order to conform to the weight of authority in other States. We have our peculiar system of laws, which from time to time have met with judicial construction; and the reasons must be cogent indeed, and the arguments unanswerable, that would induce us to shake confidence in rights acquired under them, in order to follow the opinions of sister States.

In regard to the question of the separate property of married women, we are of the opinion, that whatever seeming inconsistencies there may be in our decisions, they are as a rule founded in wisdom and learning, and whenever unbroken in their general trend, we shall endeavor to follow them. It was, perchance, unnecessary to say this, but counsel for appellees, in their very ingenious and well executed brief, insist so strenuously on this court following the opinions of California, that we have felt it proper to say what we have in regard to the matter.

From the time of the admission of our State into the Union there has been an evident disinclination on the part of our Supreme Court to enlarge by judicial decision the scope of our laws in regard to the separate property of married women. Our statute on that subject being an innovation upon the common law, the Supreme Court has given a strict construction to all its provisions, and whatever was not expressed clearly in the statute, or was not the only reasonable and tenable deduction from it, was discarded. Under the same statute now in effect (article 2851, Revised Statutes), and under a section of the Constitution of 1845 identical with that of our present Constitution, the Supreme Court has held, that crops grown upon the separate land of the wife, cultivated and gathered by her slaves, are community property. De Blane v. Lynch, 23 Texas, 25; Conner v. Hawkins, 66 Texas, 640.

Again, it was held, that lumber sawed in a mill the separate property of the wife, from trees grown on the land the separate property of the wife, the labor being performed by her slaves, was community property. White v. Lynch, 26 Texas, 195.

In the case of De Blane v. Lynch, the learned judge says: "The principle which lies at the foundation of the whole system of community property is, that whatever is acquired by the joint efforts of the husband and wife shall be their community property." The statute defining the separate property of the wife clearly sets forth what property acquired by her during marriage shall be her separate property, and it is that "acquired by gift, devise, or descent." This would preclude the idea that anything acquired during marriage by the joint labor of husband and wife could be the separate property of either. The same statute gives the sole management of all the separate property of the wife to the husband.

By the common consensus of the human family, barbarous and civilized, the man is placed at the head of the family, clothed with its government,

care, and protection, and burdened with the management and direction of its property; and it being the general rule that men occupy this responsible position in a fairly creditable manner, the law makes them the managers of the separate property of wife as well as of the community property. The fact that this power and authority is often abused, and the wife's property made unavailing to her and the children of her body, can offer no sound argument against the general rule. The law is unable to meet every exigency, and is powerless to smooth all the inequalities of this life; but the wisdom and experience of the ages has shown that it is far better to recognize the headship of the man in his family, and that fewer evils will arise from this than in creating a divided government. It is therefore a legitimate inference, that crops, though grown on the separate land of the wife, have been produced through the combined efforts of the husband and wife, and that rent arising from the lease of her property is the result of the joint care and management of him and his wife, and therefore community property. Rents are not the natural outgrowth of lands. Land has never yet brought rents without some intelligence behind it to prepare for it; to contract for and collect it. Certainly, if crops grown upon the separate property of the wife, and lumber sawed from the trees cut from her land, are not the increase of the lands, rents can not be held to be the increase; for if the one be the outgrowth of the joint labor of husband and wife, the other must be too. The first two would on a liberal construction be looked upon as the increase of the land, because they have grown out of and been sustained by it. The latter is but a right to a certain profit issuing periodically out of the land. 2 Minor's Inst., 32.

The moment the rents become due, they are disconnected from the land and become personal property, and being acquired by the joint labors of the married couple, put forth during the marital relation, they must necessarily become community. The rent of land is merely incident to it, a right connected with it, and is not a part of the land. Speaking on this subject, the learned author just cited says: " The reservation, in order to come within the definition of *rent*, must be of a *profit* (something not in the grantor before), whether in labor, provisions, part of the annual product, money, or other things. Hence a reservation of the trees or of the vesture or herbage growing on the land at the time would not be a rent, because not a profit." 2 Minor's Inst., 33.

Under the common law the rent or right itself could not be recovered in a personal action, but the arrears of rent was regarded in the same light as the severed fruits of the soil, and held to be personalty. 20 Am. and Eng. Encycl. of Law, 1035. In the case of Rhine v. Blake and Jenkins, 59 Texas, 240, this question has been distinctly and clearly answered; and while it is contended by counsel for appellees, that if it was held in that decision that rents of the separate property of the wife are commun-

ity property that it was obiter dictum, and not called for in the decision of the case, we differ from learned counsel on this point, and are of the opinion that every other issue is ignored and the decision of the case made to turn on the construction that the rent was community estate, and as much under the control of the husband as though the property from which it resulted was his separate estate. The language is certainly strong, and does not admit of doubtful construction.

We are of the opinion that the rents due on the lease of Mrs. Rice's separate estate were community property, and as such subject to garnishment for community debts.

There being error in the judgment of the lower court, it is reversed, and judgment is here rendered in favor of appellant against the garnishees for $324.27, the rent due by them to Rice and wife, and against J. P. Rice and M. F. Rice for all costs in this and the lower court.

*Reversed and rendered.*

Delivered October 11, 1893.

Motion for rehearing refused.